**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BMO HARRIS BANK, N.A.,

    *Plaintiff*,

v.

NAILEEN TRANSPORT CORP., *et al.*,

    *Defendants*.

Civil Action No. 21-cv-14002

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on Plaintiff BMO Harris Bank, N.A.'s unopposed motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b). D.E. 10. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

**I.    FACTS AND PROCEDURAL HISTORY**

    Plaintiff alleges that on March 23, 2017, it entered into a loan agreement (the "Agreement") with Defendant Naileen Transport Corp. ("Naileen").[1] Compl. ¶ 6. Under the Agreement, Plaintiff financed Naileen's purchase of a "Freightliner" and other equipment. *Id.* The truck and equipment were used as collateral in exchange for a $218,835 payment. *Id.* ¶ 7. The Agreement provides

---

[1] The Court derives the facts from Plaintiff's Complaint, D.E. 1, as well as the certifications and exhibits submitted in conjunction with Plaintiff's motion for default judgment, D.E. 10. *See Trs. of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

that an "Event of Default" shall occur if Naileen failed to pay any amount when due. *Id.* ¶ 10; *see also id.* Ex. A, § 5.1. The Agreement also provides that after an Event of Default, Plaintiff may declare the Agreement to be in default and demand payment for the entire amount due. *Id.* ¶ 12; *see also id.* Ex. A, § 5.2. If Plaintiff opted to accelerate Naileen's obligations, Naileen was also responsible for interest at the rate of 1.5% per month on the outstanding obligation. *Id.* ¶ 15; *see also id.* § 5.3. In addition, on February 10, 2017, Defendant Fidel Villar executed a Continuing Guaranty (the "Guaranty"), thereby "unconditionally guarantying [Naileen's] present and future obligations to [Plaintiff], including those obligations under the Loan Agreement." *Id.* ¶ 9. Villar is the President of Naileen. *Id.*, Ex. A at 6.

On September 17, 2019, Plaintiff notified Defendants that Naileen was in default under the Agreement for failure to make a payment and demanded payment in full. *Id.* ¶ 22; *see also id.*, Ex. D. Plaintiff sent Defendants an additional notice of default on June 28, 2021. *Id.* ¶ 23; *see also id.*, Ex. E.

Plaintiff subsequently filed its two-count Complaint on July 22, 2021. Count One asserts a claim against Naileen for breach of the Agreement, and Count Two asserts a claim against Villar for breach of the Guaranty. When Plaintiff filed its Complaint, the outstanding amount due, including accrued interest, was $116,376.70.[2] *Id.* ¶¶ 24, 28. On August 30, 2021, the Clerk of the Court entered default as to Defendants for failure to plead or otherwise defendant. Plaintiff then filed the instant motion for default judgment. D.E. 10.

---

[2] Plaintiff was able to liquidate certain collateral and has subtracted the liquidation proceeds from the total amount that is unpaid under the Agreement. Compl. ¶ 27. Under the Agreement, Naileen remains responsible for any deficiencies that remains after disposition of any collateral. *Id.* ¶ 14, Ex. A, § 5.2.

2

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment due to a defendant's failure to answer, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## I. ANALYSIS

### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

1.  **Subject-Matter Jurisdiction**

Federal district courts have diversity jurisdiction where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332(a). Plaintiff is a national banking association with a principal place of business in Illinois. Compl. ¶ 1. For diversity purposes, a national banking association "shall . . . be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348.

The Supreme Court has clarified that a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). Here, the Court presumes that Plaintiff's principal place of business is its main office. As a result, Plaintiff is an Illinois citizen for diversity purposes.

Defendant Naileen is a New Jersey corporation with its principal place of business in New Jersey. Compl. ¶ 2. In cases dealing with diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, Naileen is considered a citizen of New Jersey. Plaintiff pleads that Defendant Villar is an individual who resides in New Jersey. *Id.* ¶ 3. Plaintiff, however, does not allege where Villar is domiciled. For purposes of diversity jurisdiction, citizenship is synonymous with domicile. *Park v. Tsiavos*, 165 F. Supp. 3d 191, 198 (D.N.J. 2016). Although an individual's residence can be indicative of his place of domicile, that is not always the case. *See Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972) (explaining that to determine an individual's domicile, a court considers "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business"). Villar is the president of Naileen, *see* Compl., Ex. A at 6, which is a New Jersey based corporation. Based on this information and Villar's residency in the state, the Court concludes that Plaintiff is

a citizen of New Jersey (or at least not a citizen of Illinois) for diversity purposes. As a result, Plaintiff sufficiently establishes that there is diversity of citizenship between the parties.

Plaintiff also establishes that his damages exceed $75,000. *See* Compl., Ex. E (letter stating that the balance due on the loan at issue was $116,376.70). For purposes of determining the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 517 (D.N.J. 2007) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). A plaintiff fails to meet the amount in controversy requirement only if it appears to a legal certainty, that the claim is really for less than the jurisdictional amount. *Id.* The Court has no reason to doubt Plaintiff's alleged damages here and accepts that the amount in controversy exceeds $75,000.

Accordingly, the Court has subject matter jurisdiction over this matter because the parties are diverse, and Plaintiff sufficiently alleges in good faith that the amount in controversy exceeds $75,000.

### 2. Personal Jurisdiction

Personal jurisdiction can be established in several ways: general personal jurisdiction, specific personal jurisdiction, waiver, consent, and in-state service of an individual. General jurisdiction exists if a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). As discussed, Plaintiff alleges that Defendant Naileen is a New Jersey corporation with its principal place of business in New Jersey. Compl. ¶ 2. For an individual, "the main bases for general jurisdiction are the person's state of domicile or service of process on the individual in the forum state." *Display Works, LLC v. Bartley*, 182 F.

Supp. 3d 166, 173 n.2 (D.N.J. 2016). Also as discussed, the Court concludes that Villar is a New Jersey domiciliary. Moreover, Villar was personally served in the state. D.E. 5. Consequently, the Court has personal jurisdiction over Defendants.

### B. Service

"In entering a default judgment, a court must [also] determine whether . . . the defendants were properly served." *Wyndham Hotel Grp. Can., ULC v. 683079 Ontario Ltd.*, No. 17-4000, 2018 WL 2078704, at *6 (D.N.J. May 2, 2018). Service of process is governed by Federal Rule of Civil Procedure 4. In this instance, Villar was personally served. D.E. 5. Accordingly, Villar was properly served under Fed. R. Civ. P. 4(e)(2)(A) (providing that a person may be served by "delivering a copy of the summons and complaint to the individual personally"). Additionally, pursuant to Rule 4, service may be effectuated upon a corporation by following New Jersey law. Fed. R. Civ. P. 4 (e)(1), (h). Under New Jersey law, a corporation may be served by delivering a copy of the summons and complaint to "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation." N.J. Ct. R. 4:4-4(a)(6). To serve Naileen, Plaintiff also personally served Villar. D.E. 6. Villar is the president of Naileen. *See* Compl., Ex. A at 6. Thus, Naileen was also properly served under Rule 4.

### C. Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Complaint states a proper cause of action. In doing so, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36.

In Count One Plaintiff asserts a breach of contract claim as to Naileen. Compl. ¶¶ 30-35. To state a claim for breach of contract, a plaintiff must allege that there is (1) a valid contract; (2)

plaintiff performed under the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *12 (D.N.J. Jan. 31, 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Plaintiff alleges that there was a valid contract between it and Naileen, the Loan Agreement. Compl. ¶¶ 6-8, *see also id.*, Ex. A. Plaintiff further alleges that it performed under the Agreement, and Naileen breached the contract by failing to make payments due under the Agreement. *Id.* ¶¶ 18, 20, 22, 24; *see also id.*, Ex. D. Moreover, Plaintiff alleges that it suffered losses due to Naileen's breach of the Agreement. *Id.* ¶¶ 27-29. Accordingly, Plaintiff's breach of contract claim is sufficiently pled as to Naileen.

In Count Two, Plaintiff pleads a breach of contract claim as to Villar, for breach of the Guaranty. *Id.* ¶¶ 36-42. Count Two is also sufficiently stated. Plaintiff alleges that the Guaranty is a valid contract between it and Villar. Compl. ¶¶ 9, *see also id.*, Ex. C. Plaintiff further alleges that it performed under the Guaranty, and Villar breached the contract by failing to make payments due under the Guaranty. *Id.* ¶¶ 19-20, 24; *see also id.*, Ex. D. Moreover, Plaintiff alleges that it suffered losses due to Villar's breach of the Guaranty. *Id.* ¶¶ 27-29.

### D. Damages

While the factual allegations of the complaint "will be taken as true" for a motion for default judgment, the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016).

As discussed, Plaintiff establishes that Defendants breached the Agreement and the Guaranty. Accordingly, Plaintiff is entitled to recover damages that resulted from this breach.

Plaintiff seeks the following damages: (1) $116,376.70 in compensatory damages as of June 28, 2021, which includes the outstanding principal amount due ($105,809.94) and accrued and unpaid interest ($10,566.76); (2) $9,376 in attorneys' fees; and (3) $553.64 in costs. *See* Plf. Br. ¶ 12. Plaintiff establishes that incurred $105,809.94 in actual damages due to Defendants' failure to perform under the Agreement and the Guaranty. In addition, the Agreement states that upon acceleration of Naileen's obligations under the Agreement, interest shall accrue at the rate of 1.5% per month. Compl., Ex. A, § 5.3. To that end, Plaintiff also establishes that it is entitled to $10,566.76 in unpaid interest. Thus, the Court will award Plaintiff $116,376.70 in compensatory damages.

When considering attorneys' fees and costs, New Jersey usually follows the "'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." *In re Estate of Vayda*, 875 A.2d 925, 928 (N.J. 2005) (quoting *In re Niles*, 823 A.2d 1, 7 (N.J. 2003)). Although New Jersey law generally disfavors fee-shifting, "a prevailing party can recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001). Here, the Guaranty states that Villar agrees to the "entire indebtedness and all loses, costs, attorneys' fees and expenses which may be suffered by the Bank by reason of the Company's default." Compl., Ex. C. Thus, Villar is liable for Plaintiff's attorneys' fees and costs through the Guaranty.[3] Plaintiff includes an attorney certification stating that its attorneys incurred legal fees and that these fees were

---

[3] Plaintiff also contends that Naileen is liable for attorneys' fees and costs under the Agreement. Plaintiff relies on Section 5.2 of the Agreement, which provides, in part, that Naileen "shall also pay to [Plaintiff] all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by [Plaintiff], and (b) all other legal expenses incurred by [Plaintiff]." Compl., Ex. A, § 5.3. It is unclear to the Court whether fees fall into Section 5.3.

reasonable. *See* Murphy Cert. ¶¶ 5-6. Plaintiff, however, does not provide any bills or invoices to support this representation. Without any time entries or other similar details, the Court cannot determine whether Plaintiff's requested attorneys' fees and costs are reasonable and appropriate. *See* L. Civ. R. 54.2(a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work). As a result, the Court does not award Plaintiff with its requested attorneys' fees and costs. Plaintiff, however, is provided leave to submit documentation to support its attorneys' fees and costs.

In sum, Plaintiff is presently entitled to recover $116,376.70 in actual damages.

### D. Default Judgment Factors

Before entering default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors weigh in favor of entering default judgment. First, Defendants never responded in this matter, and as such, they have "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Moreover, there is nothing in the Complaint to show that either Defendant has a meritorious defense available. Second, Plaintiff has no other means to obtain relief for the harm allegedly caused by Defendants without default judgment and will be prejudiced without an order of default judgment. *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016). Lastly, because Defendants failed to answer or provide any reasonable explanation, the Court is permitted to draw an inference of culpability on their part. *Id*. As a result, the Court finds that default judgment is warranted.

**II.    CONCLUSION**

For the reasons set forth above, Plaintiff's motion for default judgment (D.E. 10) is **GRANTED in part** and **DENIED in part**.  An appropriate Order accompanies this Opinion.

Dated:  November 19, 2021

                                                             John Michael Vazquez, U.S.D.J.